IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
COLUMBUS DIVISION

CHRISTOPHER HICKS,   :   Case No. 2:22-cv-2204

   Plaintiff,   :   Judge Morrison

V.   :

KATHLEEN CROWLEY, *Et Al.*,   :

   Defendants.   :

_____

**PLAINTIFF CHRISTOPHER HICKS'
MOTION FOR SUMMARY JUDGMENT**

_____

Plaintiff Christopher Hicks, by and through counsel, respectfully moves the Court for judgment. This motion is supported by the attached memorandum.

Respectfully submitted,

*/s/ Matt Miller-Novak*
Matthew Miller-Novak (0091402)
Barron, Peck, Bennie & Schlemmer
3074 Madison Road
Cincinnati, Ohio 45209
Phone: (513) 721-1350
Fax: (513) 721-5029
MMN@BPBSLaw.com
Attorney for Plaintiff

*s/ Nicholas R. Owens*
NICHOLAS R. OWENS (Ohio Bar No. 0089574)
The Law Office of Nicholas R. Owens
88 Station Drive
Georgetown, Ohio 45121
Phone: (513) 706-2634
Email: nick@nickowenslaw.com

Counsel for Plaintiff Christopher Hicks

## TABLE OF CONTENTS

**MEMORANDUM IN SUPPORT OF MOTION**...........................................................1

**I. INTRODUCTION**..........................................................................................1

    A.  The BTA Conducts Open Adjudicatory Hearings, and its Rules Permit
       Recordings....................................................................................................2

    B.  Hicks Attended BTA Hearings and Wanted to Record Them...................4

    C.  Hicks is Banned from Attending All Futures BTA Hearings Other Than Those to
       which He is a Party .....................................................................................7

    D.  The BTA Banned Hicks's Wife to Retaliates Against Hicks ....................8

    E.  The BTA Refused to Provide Hicks and Opportunity to Challenge his Ban...........9

**II. LAW AND ARGUMENT**..............................................................................9

    A.  The Defendant violated Hick's First Amendment Rights.......................10

         1.  Hicks had a Right to Access BTA Hearings.................................10

         2.  Defendants unlawfully banned Hicks from future meetings.....................12

    B.  Defendants Violated the Fourteenth Amendment Right to Due Process When
       They Banned Him From Attending Hearings............................................14

    C.  Defendants Unlawfully Forbid Hicks from Recording their Hearings...................16

         1.  Defendants unlawfully discriminated against Hick's viewpoints...............16

         2.  Defendants unlawfully restrain the public's right to record virtual
            hearings....................................................................................18

         3.  Hicks had a right to record Defendants' hearings under R.C. §
            2933.52(B)(4) and OAC § 5717-1-16(H).....................................19

         4.  The Defendants unlawfully deprived Hicks of his rights under Ohio law to
            record BTA hearings and meetings............................................19

**III. CONCLUSION.**.......................................................................................21

# TABLE OF AUTHORITIES

## <u>Cases</u>

*Barna v. Board of School Directors of the Panther Valley School Dist.*, 143 F.Supp.3d 205 (M.D. Pa. 2015) ................................................................................1

*Cyr v. Addison Rutland Supervisory Union*, 60 F.Supp.3d 536, 548 (D. Vt. 2014)...................................................................................................1,2,13,15

*Walsh v. Enge*, 154 F.Supp.3d 1113 (E.D. Wash. 2015) ......................................1

*Seum v. Osborne*, No. 3:17-cv-00069-GFVT, 2018 WL 4685442 (E.D. Ky. Sept. 28, 2018) ...............................................................................................1,2,13,15

*Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 580 (1980) ..............................9

*Press-Enterprise v. Superior Court*, 464 U.S. 501, 505-10 (1984)..............................9,10

*Press-Enterprise v. Superior Court*, 478 U.S. 1, 9 (1986) ...........................................9,10

*Globe Newspaper v. Superior Court for Norfolk County*, 457 U.S. 596, 608-10 (1982) ..................................................................................................10,11

*Detroit Free Press v. Ashcroft*, 303 F.3d 681, 695-6 (6th Cir. 2002) ..............................10

*NY Civil Liberties Union v. NY City Transit Authority*, 684 F.3d 286 (2d Cir. 2012).....10

*Westmoreland v. Columbia Broad. Sys., Inc.*, 752 F.2d 16, 22 (2d Cir. 1984) ...............10

*Society of Prof. Journalists v. Sec'y of Labor,* 616 F.Supp. 569, 574 (D. Utah 1985)......10

*Butz v. Economou,* 438 U.S. 478, 512-13 (1978) ...............................................................11

"The Evolution of Public Opinion on Taxes," Navigator (Oct. 24, 2018), ..................................................................................................................11

*Brown v. City of Jacksonville*, No. 3:06-CV-122-J-20MMH, 2006 U.S. Dist. LEXIS 8162, 2006 WL 385085, at *8 (M.D. Fla. Feb. 17, 2006)............................................12, 13

*McDonough v. Mata*, 489 F. Supp. 3d 1347, 1365-6 (S.D. Fla. 2020).............................12

*Rosenberger v. Rector & Visitors of the Univ. of Va.*, 515 U.S. 819, 115 S. Ct. 2510 (1995) ......................................................................................................................................................13

*Huminski v. Corsones*, 396 F.3d 53, 92-93 (2d Cir. 2005)...............................................13

*Mama Bears of Forsyth Cnty. v. McCall*, 642 F. Supp. 3d 1338, 1362 (N.D. Ga. 2022) ......................................................................................................................................................13

*Stevens v. Sch. City of Hobart*, 2015 U.S. Dist. LEXIS 106349, 2015 WL 4870789, at *14 (N.D. Ind. Aug. 6, 2015) .....................................................................................................13

*Mathews v. Eldridge*, 424 U.S. 319, 332 (1976)...............................................................14

*Jahn v. Farnsworth*, 617 Fed. App'x 453, 459 (6th Cir. 2015) ...................................14,19

*Warren v. City of Athens*, 411 F.3d 697, 708 (6th Cir. 2005)...........................................14

*Doe v. Sullivan County, Tenn.*, 956 F.2d 545, 557-58 (6th Cir. 1992)........................14, 19

*Kentucky Dep't of Corrections v. Thompson,* 490 U.S. 454, 461, 460, 109 S.Ct. 1904, 1909 (1989).........................................................................................................................................14

*Kaminski v. Coulter*, 865 F.3d 339, 347-48 (6th Cir. 2017).............................................15

*Citizens for Cmty*. Values, *Inc. v. Upper Arlington Pub. Library Bd. of Trs.*, No. C-2-08-223, 2008 U.S. Dist. LEXIS 85439 (S.D. Ohio Aug. 14, 2008) ........................................16

*Reed v. Town of Gilbert*, 135 S.Ct. 2218, 2227 (2015) .....................................................16

*Good News Club v. Milford Central School*, 121 S.Ct. 2093, 533 U.S. 98, 106-7 (2001) ...................................................................................................................16

*Ison v. Madison Local School Dist.*, 3 F.4th 887 (6th Cir. 2021) .......................................17

*Matal v. Tam,* 137 S.Ct. 1744, 1763 (2018) ......................................................17

*Askins v. Dep't of Homeland Sec.*, 899 F.3d 1035, 1044 (9th Cir. 2018).........................17

*Fields v. City of Philadelphia*, 862 F.3d 353, 356 (3d Cir. 2017) ...................................17

*Turner v. Lieutenant Driver*, 848 F.3d 678, 689 (5th Cir. 2017) ...................................17

*Am. C. L. Union of Ill. v. Alvarez*, 679 F.3d 583, 600 (7th Cir. 2012) ...........................17

*Glik v. Cunniffe*, 655 F.3d 78, 87 (1st Cir. 2011) ..................................................18

*Smith v. City of Cumming*, 212 F.3d 1332 (11th Cir. 2000) ..........................................18

1988 Ohio Atty. Gen. Ops. No. 88-087 ...........................................................18,19

*Kline v. Davis,* 2001-Ohio-2625, *8 (4th Dist. 2001) ..................................................19,20

*McVey v. Carthage Twp. Trustees,* 4th Distr. Athens No. 04CA44, 2005-Ohio-2869 (4th Dist. 2005) ..................................................................................................20

## Statutes

O.R.C. § 5703.02....................................................................................................2
O.R.C. § 121.22....................................................................................................10
O.R.C. § 2917.12....................................................................................................15
O.R.C. § 2933.52....................................................................................................18
O.A.C. § 5717-1-16.......................................................................3,11,15,16,18,19, 20
O.A.C. § 5717-1-17....................................................................................................4,11

## MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

## I.    INTRODUCTION

This is a case about a state agency that permanently censored a critic for violating a rule that does not exist.  Plaintiff Christopher Hicks ("Hicks") seeks summary judgment holding that Defendants David Harbarger, Jasmine Clements, Jeffrey Caswell, and the Ohio Board of Tax Appeals ("BTA") violated Hicks's First and Fourteenth Amendment rights when they permanently banned him from attending or recording any of the BTA's public hearings.  Under Ohio Admin. Code ("OAC") § 5717-1-16(H), all BTA hearings are always open to the public, and hearings "may be recorded."   As a government transparency advocate, Hicks attempted to both access and record the BTA's public hearings to inform the public of its activities.  Hicks did not threaten anyone.  He did not confront anyone.  He did not even speak out of order until he was spoken to. Hicks's efforts to make the BTA transparent and accessible to the public resulted in the BTA forever banning Hicks from its otherwise public hearings for violating a rule that does not exist.

The First Amendment clearly provides that citizens like Hicks have a constitutionally protected right to access administrative adjudicatory hearings, and the government may not categorically ban individuals from attending future hearings based upon past conduct.  *See, e.g., Barna v. Board of School Directors of the Panther Valley School Dist.*, 143 F.Supp.3d 205 (M.D. Pa. 2015); *Walsh v. Enge*, 154 F.Supp.3d 1113 (E.D. Wash. 2015); *Cyr v. Addison Rutland Supervisory Union*, 60 F.Supp.3d 536, 548 (D. Vt. 2014); *Seum v. Osborne*, No.  3:17-cv-00069-GFVT, 2018

1

WL 4685442 (E.D. Ky. Sept. 28, 2018).  Here, the BTA did not afford Hicks any opportunity to appeal or challenge the ban, and the BTA instead imposed a permanent, lifetime restriction without any recourse for Hicks. Courts have held that the absence of a review mechanism in situations like this one violates due process.  *See Cyr*, 60 F.Supp.3d at 552-3; *Seum*, 2018 WL 4685442, at \*4.

This Court has previously held that Hicks's claims were likely to succeed on the merits, and this Court granted Hicks's Motion for Preliminary Injunction on that issue.  The facts and the law have not changed since that holding, and Defendants have never lifted the ban.  This Court should issue summary judgment in Hicks's favor and permanently enjoin Defendants' order banning Hicks from attending BTA hearings without due process.

## A. The BTA Conducts Open Adjudicatory Hearings, and its Rules Permit Recordings.

The BTA is a creature of statute.  *See* Ohio Rev. Code § 5703.02.  It has the express authority to hear and determine all appeals of questions of law and fact arising under the tax laws of the state of Ohio and therefore serves as an adjudicative body.  *Id*. at § 5703.02(A). The BTA has three types of hearings: (1) in person; (2) telephone; and (3) virtual livestream.  Doc #55, BTA Depo at 79.  Concerning the virtual hearings, those hearings are broadcast on the BTA's website, anyone can access a virtual hearing online without a password.  *Id.* at 85.  The BTA is permitted to adopt its own rules for conducting hearings and managing its operations.  Ohio Rev. Code at § 5703.02(D)(1)-(3).  The BTA has codified its own rules and procedures in Chapter 5717 of the OAC.  Under these provisions, the BTA conducts adjudicatory hearings, at which the parties to a tax appeal proceeding may present new evidence regarding the tax dispute in question.  *See* OAC § 5717-1-16.

2

BTA hearings are open to the public.  OAC § 5717-1-16(H).  Concerning recordings of hearings, the BTA's Rule expressly states the following under OAC § 5717-1-16(H):

> All hearings before the board shall be open to the public.  **Hearings may be recorded**, and such recordings shall be made available for examination at the board's office.  (emphasis added).

Thus, the BTA's policy specifically permits recording of its hearings.  According to the BTA's testimony in its FRCP 30(b)(6) deposition, OAC § 5717-1-16(H) is the "only rule that the BTA has about hearings." Doc #55, BTA Depo at 26:7-9.  Nonetheless, the BTA seems to have suggested that the words "may be recorded" to mean "may *not* be recorded" when it cited this rule to forbid Hicks from recording its meetings.  But such an interpretation defies logic and simple literacy.

Indeed, even Defendants and their agents now admit that this rule does not forbid recording hearing upon cross examination.  Defendants' hearing officer Mary Therese Bridge ("Bridge") agrees that there is no language in the hearing rules that expressly forbids the recording of hearings:

> **Q.** Where does it say that members of the public may not record any hearings?
>
> **Bridge:** Those words aren't there like that.  Doc #53, Bridge Depo at 62: 21-3.

In addition, Defendant Harbarger also admitted in deposition that OAC § 5717-1-16(H) does not forbid the public from recording hearings.

> **Q**. Do you understand that rule to forbid recording any hearings?
>
> [objection omitted]
>
> **Harbarger:** No. I understand that to mean that the board can record them if the board desires.
>
> **Q.** Okay. But you don't understand that to mean the public is forbidden to record the hearings?
>
> **Harbarger**: No, this rule has nothing to do with that.  Doc #54, Harbarger Depo at 46: 8-19.

And the BTA also admitted in its deposition that the BTA's rules do not actually expressly forbid recording hearings in its FRCP 30(b)(6) deposition.

> **Q**. Okay. Well, you would agree nothing in subsection H expressly states that the public may not record any BTA hearing, correct?
>
> **BTA/Crowley**: Yes, I would agree that subsection H does not use the term the public may not record. That is not what subsection H says; that's correct. Doc #55, BTA Depo at 26:10-16.

Thus, the hearing rules simply provide "meetings may be recorded," and that the BTA will make its *own* recordings available (as actually required under the Ohio Open Records Act). The Rules do not forbid a single person from recording the same hearing. Consequently, the public has no notice that the BTA forbids recording its hearing, whether in person, on the telephone, or virtual hearings online.

### B. Hicks Attended BTA Hearings and Wanted to Record Them.

In accordance with Ohio law and the BTA's own rules, Hicks attended, or attempted to attend, numerous BTA hearings in the latter months of 2021. These meetings were of interest to the public and to Hicks in particular, including one hearing to which he was a party. Hicks desired to record these hearings. The first such hearing took place on October 20, 2021. *See* Ex. 1 Hicks Aff. ¶ 4. The hearing involved a major development in Clermont County referred to as South Afton, which had tax implications for the whole county, and Hicks was a party to the tax appeal. *Id*. Hicks brought a camera with him to record the hearing to aid in his advocacy of his position. *Id*. at ¶ 5. Parties to tax appeals before the BTA may submit post-hearing briefs, and Hicks thought it would be helpful to have access to his own recording of the hearing to assist in preparing his brief. *See id*.; OAC § 5717-1-17(A). As a transparency advocate, Hicks also felt that the public should have access to a recording of the hearing and what transpired. *See* Ex. 1 Hicks Aff. ¶ 5.

4

Despite the fact that the camera was not blocking any person's view of the hearing or movement in the hearing room, hearing officer Bridge refused to allow Hicks to record his own hearing. *Id*. at ¶ 6. While she was unable to provide any legal rule or provision to justify her decision, she claimed that Hicks needed to complete a media request to record hearings in the future. *Id*. But she provided no form or process for Hicks to do so. *Id*. No such form even exists. Rather than allow Hicks to record the hearing, the hearing officer instead canceled it altogether. *Id*.

On December 2, 2021, Hicks again appeared at the BTA offices to observe tax appeals hearings on matters of interest to him as a citizen. *Id*. at ¶ 10. Hicks had previously communicated to the BTA's Executive Director, Kathleen Crowley, on November 22, 2021, his desire and intent to both attend and record the December 2, 2021, hearings. *Id*. When Hicks arrived at the BTA's change in office, he learned that the hearings were by telephone and not in person, even though no information on the BTA's website would have alerted the public to this format. *Id*. at ¶ 11. On arrival, Hicks was detained in the lobby at the check-in desk. *Id*. at ¶ 12. He was then escorted by two Ohio State Highway Patrol Troopers to the BTA offices. *Id*.

Hicks was then provided with the call-in information for the hearings. *Id*. at ¶ 15. When Hicks attempted to sit in the BTA waiting area outside the hearing rooms to call into the first hearing, which was already taking place, he was told he could not do so and had to leave. *Id*. This was the case even though Hicks was using earbuds and was not disturbing anyone in an empty waiting room. *Id*. Both Crowley and the uniformed officer instructed him to leave the location of the public hearings. *Id*. Hicks was threatened with arrest for disorderly conduct if he did not leave the premises, even though all he was trying to do was access the BTA's public hearings in the BTA's offices. *Id*. at ¶ 16. Crowley's threats to Hicks that morning created such a delay that he

5

was not able to call into one of the BTA hearings he desired to witness. *Id*. at ¶ 17. By the time he left the building and returned to his car, the hearing was over. *Id*.

Numerous tax appeals appeared on the BTA's December 6, 2021, docket. *Id*. at ¶ 18. Hicks wanted to attend and observe the hearings, as well as to record them. *Id*. Given Hicks' difficulties with his own hearing in October and the December 2, 2021, hearings, Hicks drafted and submitted requests to record the December 6, 2021 hearings. *Id*. at ¶ 19. He received no response before December 6, 2021. *Id*. at ¶ 20.

On December 6, 2021, when Hicks entered the BTA building for the hearings, he was again monitored. *Id*. at ¶ 21. Hicks entered one of the hearing rooms quietly and walked towards the seating area for observers that was otherwise empty. *Id*. at ¶ 22. When he did so, the hearing officer stopped the hearing and addressed Hicks. *Id*. The hearing officer began to question Hicks and then indicated his request to record the hearing was denied. *Id*. Responding to the hearing officer, Hicks calmly asked for clarification as to the basis of the hearing officer's decision, given that the BTA's rules specifically allow recordings. *Id*.

Hicks, who never approached the hearing officer, was then rushed by a uniformed officer and escorted out of the hearing. *Id*. at ¶ 23. Outside of the hearing room, Hicks again questioned the basis for his treatment. *Id*. The uniformed officer then took Hicks to a sign in the lobby to show Hicks the rule he was allegedly violating but then found no such rule existed. *Id*. The uniformed officer then referred Hicks to the BTA's website without answering the question as to what rule prohibited Hicks from recording. *Id*. Hicks went to the website and pointed out that no such rule exists. *Id*. Hicks was again threatened with arrest. *Id*. Hicks was unable to observe all the BTA hearings he desired to see as a concerned citizen on December 6, 2021. *Id*. at ¶ 24.

**C. Hicks is Banned from Attending All Future BTA Hearings Other Than Those to which He is a Party.**

On December 9, 2021, the BTA permanently banned Hicks from attending any BTA hearings other than those to which he is a party. *Id*. at ¶ 25; *see also* Ex. 2: Order Banning C. Hicks ("The Ban"). Defendants Harbarger, Clements, and Caswell all signed the Order. The Order indicates that Hicks disrupted hearings on December 2nd and December 6th and that the hearings could not go forward as a result. *See* Ex. 2. As described above, Hicks disagrees. Hicks did nothing other than peacefully attempt to record meetings as expressly permitted under the BTA's own Rules. Had the BTA not consistently interfered with Hicks's rights, it is unlikely that Hicks would have even spoken at most hearings he attended.

Nonetheless, the BTA Defendants banned Hicks. And Defendant Harbarger acknowledged in his deposition that the ban was intended as *permanent*. Doc #54, Harbarger Depo. at 68. Moreover, the ban is so broad and absolute, it even bans Hicks from watching a virtual hearing, which is streamed online and available to the entire world. Consequently, the BTA permanently banned an American citizen from watching an online hearing that someone could stream in Russia.

**D. The BTA Banned Hicks's Wife to Retaliate Against Hicks.**

Following the BTA's Ban of Hicks, the BTA also permanently banned Hicks' wife from attending BTA meetings and hearings other than those to which she is a party. *See* Ex. 3: Order Banning B. Hicks. The order alleges that Hicks' wife surreptitiously recorded small claims hearings conducted by the BTA in violation of its rules. *Id*. But there are no rules prohibiting citizens from recording small claims hearings. To the contrary, the rules specifically indicate that "hearings may be recorded." OAC § 5717-1-16(H). The order also bans Belinda Hicks from attending virtual hearings anyone can view online claiming that Belinda Hicks disrupted a meeting. This is not true.

7

Bridge admitted in deposition that Belinda Hicks did not disrupt her hearing as alleged in the Ban Order, and Bridge had no ability to know that Belinda Hicks would ever disrupt a future hearing. Bridge testified as follows:

> **Q.** So she [Belinda Hicks] didn't disrupt the hearing at all then, correct?
>
> **Bridge**: I don't think she was disruptive. Doc #53, Bridge Depo at 51:20-22.
>
> ***
>
> **Q**. And you have no way, at least as an individual, you have no way of knowing that she would ever disrupt a future hearing, correct?
>
> **Bridge**: I wouldn't, correct. Id. at 55:21-24.

Defendants permanently banned Belinda Hicks anyway. Doc #55, BTA Depo at 76: 17-19. Hearing officer Bridge also admitted the BTA had no real knowledge that Belinda Hicks even violated the BTA's *invented* no-recording rule:

> **Q**. Well, if the only thing that you heard her record or play is you reading your introduction, which is do not record the hearing, how do you know that she didn't stop recording as soon as you were done with your instruction?
>
> **Bridge**: I don't know.
>
> **Q.** For all you know, she may have complied with your instruction 100 percent, correct?
>
> **Bridge**: Correct. Doc #53, Bridge Depo at 57: 20-25; 58:1-3.

Thus, the BTA's ban letter to Belinda Hicks was objectively false in its allegations that Belinda Hicks disrupted any hearing, and the BTA banned Belinda Hicks from future hearings regardless. Simply stated, the BTA permanently banned Belinda Hicks for no other reason than her association with her husband. The BTA's motives were purely retaliatory and punitive of Hicks's speech.

**E. The BTA Refused to Provide Hicks an Opportunity to Challenge his Ban.**

The BTA's hearings are supposed to remain open to the public. As stated above, Hicks and Belinda Hicks were permanently banned from future BTA hearings based upon a rule that did not exist, misrepresentations about their meeting conduct, and other inaccuracies. Indeed, according to Defendant Harbarger, the BTA based its decision on allegations from testimony from just a few people. Harbarger Depo. at 68. The BTA never watched videos or listened to recordings. *Id.* It merely accepted all the *uncontested* allegations from Director Crowley and a couple others as gospel.

Neither Christopher Hicks's nor Belinda Hicks's ban orders provided any information or process for them to appeal their bans to the BTA. Still, Hicks emailed Director Crowley with requests to speak to the BTA to appeal against his ban. Doc #55, BTA Depo at 77: 4-8. Director Crowley admitted that she received Hicks's requests to appeal his ban, but the BTA completely ignored his requests to present evidence and challenge his ban. *Id.* at 9-21. The BTA decided instead to deprive Hicks of the opportunity to respond to the accusations made against him. Simply stated, the BTA chose to deny Hicks any due process at all.

**II.    LAW AND ARGUMENT**

Hicks is entitled to summary judgment because: (1) the BTA permanently banned Hicks from future hearings based upon alleged past conduct; (2) the BTA chose to deny Hicks any process to challenge his ban; and (3) the BTA forbid Hicks to record any hearing based upon a rule that does not even exist.

## A.  The Defendant Violated Hicks's First Amendment rights.

### 1.  Hicks had a Right to Access BTA Hearings.

The right to access, observe, and view adjudicatory government hearings is "implicit in the guarantees of the First Amendment."  *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 580 (1980) (plurality opinion).  The government may not exclude the public from a trial or hearing without sufficient justification.  Justice Brennan's concurrence in *Richmond Newspapers* posited the "experience and logic" test that is now widely used to assess whether a right of access attaches to a given government proceeding under the First Amendment.  *See id*. at 589; *see also, e.g., Press-Enterprise v. Superior Court*, 478 U.S. 1, 9 (1986) (describing "experience and logic" test for First Amendment right of access).  Under this test, courts first inquire whether common experience indicates that the place and process are historically open to the public.  *Press-Enterprise*, 478 U.S. at 8.  "[T]he adjudicatory work of administrative agencies can be sufficiently like that of the courts to warrant requiring the agencies to follow principles that apply to courts."  *NY Civil Lib. Union*, 684 F.3d at 300.

Next, courts also consider logic and ask whether public access "plays a significant positive role in the functioning of the particular process in question."  *Id*.  Interpreting this test broadly in favor of access, the Supreme Court has subsequently held that the First Amendment safeguards a right of access not only in the context of criminal trials, but also to related proceedings like witness testimony, preliminary hearings, and the transcripts of juror *voir dire*.  *See Globe Newspaper v. Superior Court for Norfolk County*, 457 U.S. 596, 608-10 (1982); *Press-Enterprise*, 478 U.S. at 13-5; *Press-Enterprise v. Superior Court*, 464 U.S. 501, 505-10 (1984).

The Sixth Circuit has held the experience and logic" test applies to administrative proceedings as well.  *See Detroit Free Press v. Ashcroft*, 303 F.3d 681, 695-6 (6th Cir. 2002).

Applying this test, courts have extended the right of access under the First Amendment to a wide variety of administrative hearings, including adjudicatory administrative hearings, and civil proceedings as well. *See, e.g., NY Civil Liberties Union v. NY City Transit Authority*, 684 F.3d 286 (2d Cir. 2012) (holding that NY Transit Adjudication Bureau administrative adjudicatory hearings could not be closed to the public under the First Amendment); *Westmoreland v. Columbia Broad. Sys., Inc.*, 752 F.2d 16, 22 (2d Cir. 1984) (finding constitutional right of access to civil trials); *Society of Prof. Journalists v. Sec'y of Labor*, 616 F.Supp. 569, 574 (D. Utah 1985) (finding that Mine Health Safety Administration administrative hearing was open to the public as a matter of First Amendment right of access), *vacated as moot*, 832 F.2d 1180 (10th Cir. 1987).

Here, Ohio law mandates openness in its governmental meetings as a default starting point, *see* Ohio Rev. Code § 121.22. The BTA's own administrative regulations specify that adjudicatory hearings are open to the public. OAC § 5717-1-16(H). Both provisions date back to the 1970s. Ohio law therefore protects the public right to attend adjudicatory tax appeals hearings. In addition, the adjudicatory nature of BTA hearings weighs in favor of their openness. BTA hearings share common attributes with the modern judicial process. *See Butz v. Economou,* 438 U.S. 478, 512-13 (1978). The parties to BTA hearings submit briefs. *See* OAC § 5717-1-17. Witnesses and new evidence may be presented. *Id*. at (A), (I). Hearing officers preside over and decide the legal and factual issues in dispute. *Id*. at § 5717-1-16. These adjudicatory attributes reinforce what experience confirms: that there exists a presumptive right of access to BTA hearings.

Turning to the logic component of the test, there are clear benefits to allowing the public to observe these hearings. Taxation is one of the more controversial exercises of government authority and allowing public access to tax appeals promotes public confidence in the manner in which taxes are assessed and collected. *See, e.g.,* "The Evolution of Public Opinion on Taxes,"

11

Navigator (Oct. 24, 2018), available at https://navigatorresearch.org/the-evolution-of-public-opinion-on-taxes/ (last viewed May 27, 2022).  Moreover, because literally every citizen is subject to the taxation authority, allowing public access to administrative tax hearings promotes uniformity and regularity across taxpayers.  In a more general sense, the BTA itself benefits from public watchfulness, in that "[p]ublic scrutiny…enhances the quality and safeguards the integrity of the factfinding process." *Globe Newspaper*, 457 U.S. at 606.  As a result, both experience and logic support protecting the public's right to attend and observe BTA adjudicatory hearings.

## 2. Defendants unlawfully banned Hick from future meetings.

In addition to this Court's prior determination that such permanent bans violate the First Amendment, numerous district courts have held that permanent bans on First Amendment rights based upon past conduct are unconstitutional because they are not narrowly tailored to a compelling government purpose.

In *Brown v. City of Jacksonville*, No. 3:06-CV-122-J-20MMH, 2006 U.S. Dist. LEXIS 8162, 2006 WL 385085, at *8 (M.D. Fla. Feb. 17, 2006), the Middle District of Florida granted a preliminary injunction against the City of Jacksonville from barring a citizen from attending its council meetings.  In that case, Jacksonville banned a citizen for almost three months because she violated council rules, and she was charged with resisting arrest and disturbing a lawful assembly. *Id.* at 1-2.

> [T]he Court finds that there is a substantial likelihood that Plaintiff will succeed in her claim that the City's directive banning her from seven future cycles of Council meetings is unconstitutional as applied to Plaintiff Brown. **Banning Plaintiff from future meetings is not a restriction that is "narrowly tailored" to achieve the significant governmental interest of running the meetings efficiently, while successfully preventing her disruptive behavior.** Although the City does not have to use the "most appropriate method" of restricting the Plaintiff, it should nonetheless use a directive that is more "narrowly tailored" than a sweeping ban from future meetings for months. *Id.* at **12-13.  (internal page citations removed) (emphasis added).

Thus, in *Brown*, even though the court determined that the plaintiff disrupted the meeting, the court nonetheless determined that a three-month ban was unconstitutional because a future ban on speech based upon past conduct is not narrowly tailored to achieve a significant government interest. Consequently, this Court granted preliminary injunction immediately enjoining Jacksonville's ban policy. *Id.*

Likewise, the Southern District of Florida refused to grant qualified immunity to a police officer who would not let a citizen attend a public meeting based upon past conduct in *McDonough v. Mata*, 489 F. Supp. 3d 1347, 1365-6 (S.D. Fla. 2020). In *Mata*, an officer refused to permit the citizen to enter the government meeting until he "obtained permission" to enter meetings again. *Id.* at 1366. In denying immunity, the court held that it is clearly established that an officer violates the First Amendment when he excludes a speaker from a forum he is entitled to enter. *Id.*, *citing*, *Rosenberger v. Rector & Visitors of the Univ. of Va.*, 515 U.S. 819, 115 S. Ct. 2510 (1995); *Brown*, No. 06-cv-122-J-20MMH, 2006 U.S. Dist. LEXIS 8162, 2006 WL 385085, *4.

As another example, in *Cyr v. Addison Rutland Supervisory Union*, a defendant school district issued notices prohibiting a citizen from entering its property claiming that the citizen intimidated school staff, delivered letters to the school daily, and had engaged in other threatening conduct. 60 F. Supp. 3d 536, 539-40 (D. Vt. 2014). The notice of trespass in that case banned the citizen from all school property for two years. *Id.* at 540. That court determined that a categorical ban that included attendance at school board meetings was unconstitutional because it was not "narrowly tailored" to a compelling government purpose. *Id.* at 547-8; *see also*, *Seum v. Osborne*, 348 F. Supp. 3d 616, 631 (E.D. Ky. 2018). (where the court held "the unequivocal and permanent ban of Seum from the third floor of the Capitol Annex suggests this restriction is not narrowly tailored to serve that state interest" when denying a motion to dismiss); *Huminski v. Corsones*, 396

13

F.3d 53, 92-93 (2d Cir. 2005) (where the Second Circuit found that a categorical ban on expressive activity in or around Vermont state court facilities or grounds was an unreasonable restriction because "[s]uch broad restrictions are generally frowned upon even in nonpublic forums."); *Mama Bears of Forsyth Cnty. v. McCall*, 642 F. Supp. 3d 1338, 1362 (N.D. Ga. 2022) (holding that categorically banning individuals from open school board meetings is unreasonable and unconstitutional), *Stevens v. Sch. City of Hobart*, 2015 U.S. Dist. LEXIS 106349, 2015 WL 4870789, at *14 (N.D. Ind. Aug. 6, 2015) (holding that an "outright ban" on attending school board meetings "is not narrowly tailored to achieve" the government's interest).

Applied here, the BTA's Ban is unconstitutional and violates Hicks' First Amendment right of access. The BTA indefinitely banned Hicks from attending any future hearing based upon allegations concerning his past conduct. This disproportionate response to Hicks' desire to record public hearings is unjustified and unconstitutional. If the BTA believes Hicks is disruptive or out of order in any particular hearing, it can exclude him from that hearing to the extent necessary to address the alleged disruption.[1] But the BTA cannot permanently exclude Hicks from attending BTA hearings without recourse. Such a broad ban is in essence a subterfuge for censorship, and it is not narrowly tailored to any compelling or significant government purpose.

### B. Defendants Violated the Fourteenth Amendment Right to Due Process when They Banned Him From Attending Hearings.

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). "Procedural due process requires that a person be afforded notice and a right to be heard before the state

---

[1] Hicks does not concede that he has been, or ever will be, disruptive of a BTA hearing or that the BTA's actions removing him from prior hearings were reasonable, constitutional, or just.

deprives him of a property or liberty interest." *Jahn v. Farnsworth*, 617 Fed. App'x 453, 459 (6th Cir. 2015) (citing *Warren v. City of Athens*, 411 F.3d 697, 708 (6th Cir. 2005)).

"In reviewing an alleged violation of procedural due process, a court must first determine whether the party has identified a protected liberty or property interest, and then turn to whether the deprivation of that interest contravened notions of due process." *Id.* (citations omitted). States may create liberty interests through statutes, rules, regulations, or policy statements. *Doe v. Sullivan County, Tenn.*, 956 F.2d 545, 557-58 (6th Cir. 1992). To assess whether a liberty interest is present, "[c]ourts should examine the language of the relevant statutes." *Id.* (citing *Kentucky Dep't of Corrections v. Thompson,* 490 U.S. 454, 461, 460, 109 S.Ct. 1904, 1909 (1989). "For instance, the use of 'explicitly mandatory language' in connection with 'specified substantive predicates' that limit the decisionmaker's discretion will support the conclusion that the State has created a liberty interest." Id. (citing *Thompson*, 490 U.S. at 463, 109 S.Ct. at 1910).

Hicks asserts a protected liberty interest in his ability to access BTA hearings that is sufficient to trigger due process protections. *See, e.g., Kaminski v. Coulter*, 865 F.3d 339, 347-48 (6th Cir. 2017). Courts considering similar bans on attendance at public proceedings have reached an identical conclusion. *See, e.g., Seum*, 2018 WL 4685442, at \*4; *Cyr*, 60 F.Supp.3d at 552. Despite his protected liberty interest, Hicks did not have an opportunity to be heard prior to the issuance of the Ban. But the ability to contest the allegations leading to a deprivation of a constitutional right is a fundamental component of adequate due process. *See Cyr*, 60 F.Supp.3d at 552-3.

Indeed, there are no issues of material fact here. Defendants' Rules expressly provide that their meetings are open to the public providing Hicks (and the rest of the public) an interest in attending the BTA's hearings. This is a non-discretionary rule. Hicks made requests to appeal his

15

ban to attend those hearings, Director Crowley received them, but Hicks was never provided an opportunity to appeal Defendant's decision to permanently ban him from attending any future BTA hearings. Defendants could have charged him with disrupting a public meeting under R.C. § 2917.12, which would have resulted in some due process. But Defendants were not interested in due process-only their own conclusions. Consequently, the Defendant deprived Hicks of procedural due process as required under the Fourteenth Amendment.

### C. Defendants Unlawfully Forbid Hicks from Recording their Activities.

Defendants have no published rule that forbids the public from recording its hearings, whether through audio or visual format. On the contrary, Defendants' published rules expressly state that its hearings are open to the public at all times, and that its meetings "may" be recorded. OAC § 5717-1-16(H). In addition, under Ohio law, it is generally lawful for any Ohio citizen to record a conversation he is participating in.[2] These rights do not stop at the BTA's doors. Here, the Defendants had no reasonable purpose to invent a rule to deprive Hicks from recording a BTA hearing other than to discriminate against his critical viewpoints in manner that violated Ohio law, the First Amendment, and the Fourteenth Amendment.

1. <u>Defendants unlawfully discriminated against Hick's viewpoints.</u>

There are three types of public forums: traditional public forums, limited public forums, and non-public forums. See, *Citizens for Cmty. Values*, *Inc. v. Upper Arlington Pub. Library Bd. of Trs*., No. C-2-08-223, 2008 U.S. Dist. LEXIS 85439 (S.D. Ohio Aug. 14, 2008). **Regardless of forum type, the government may not discriminate against speech based on its content**. *Reed v. Town of Gilbert*, 135 S.Ct. 2218, 2227 (2015) ("Government regulation of speech is content based if a law applies to particular speech because of the topic discussed or the idea or

---

[2] See R.C. § 2933.52(B)(4).

message expressed."); see also, *Good News Club v. Milford Central School*, 121 S.Ct. 2093, 533 U.S. 98, 106-7 (2001) (Stating that limited forum regulation must not discriminate against viewpoints, and they must be reasonable in the purpose served by the forum).

The Defendants had no Rule forbidding recording its hearings. On the contrary, its Rule permits recordings. OAC § 5717-1-16(H). When asked deposition why she decided to stop the October 2021 hearing to stop Hicks from recording the hearing, Hearing Officer Bridge cited Hicks's expressive conduct to justify her decision.

> **Q**. Okay. But you're the one that confronted him about the camera; he didn't confront you, correct?
>
> **Bridge**: There's something confrontational about setting up, before I enter the room setting up a large tripod with a recording device before I even came in the room. I think there's something confrontational about that. (Doc #53, Bridge Depo. at 26: 16-23).
>
>                           \*\*\*
>
> **Q**. Is there something inherently confrontational about setting up a tripod and putting a camera on it?
>
> **Bridge**: I thought there was something confrontational about it, about that day. I can't speak to like all times that someone would do something like this or all different people. I can just speak to that day. (Id. at 27: 9-16).

Thus, Bridge did not cite a concern for privacy to justify interfering with Hicks's right to record the hearing. Instead, she testified that she considered the act of recording the hearing to constitute what she considered a "confrontation" expression. However, under Sixth Circuit precedent, even "abusive" and offensive viewpoints are protected, so it is not appropriate to restrain a viewpoint merely because a government listener finds that expression "confrontational." *See generally*, *Ison v. Madison Local School Dist*., 3 F.4th 887 (6th Cir. 2021); see also, *Matal v. Tam,* 137 S.Ct. 1744, 1763 (2018) (stating that giving offense is a protected viewpoint).

Therefore, Defendants cannot lawfully restrain Hicks from recording a hearing merely because they perceive the act of recording a hearing as a "confrontational" expression that makes the Defendants uncomfortable. Nonetheless, Defendants invented rules, media request forms, and

every other fake justification to stop Hicks from recording hearings because they disfavored his viewpoints. Defendants' conduct violated the First Amendment because it discriminated against protected viewpoints that neither Defendants' rules nor Ohio law forbid.

      2. <u>Defendants unlawfully restrain the public's right to record virtual hearings.</u>

The BTA cannot forbid Ohio citizens from recording virtual hearings. Although the Supreme Court has not addressed the issue, six federal appellate courts have recognized the constitutional right to record under the First Amendment, reflecting a growing consensus on the matter. *Askins v. Dep't of Homeland Sec.*, 899 F.3d 1035, 1044 (9th Cir. 2018); *Fields v. City of Philadelphia*, 862 F.3d 353, 356 (3d Cir. 2017); *Turner v. Lieutenant Driver*, 848 F.3d 678, 689 (5th Cir. 2017); *Am. C. L. Union of Ill. v. Alvarez*, 679 F.3d 583, 600 (7th Cir. 2012); *Glik v. Cunniffe*, 655 F.3d 78, 87 (1st Cir. 2011); *Smith v. City of Cumming*, 212 F.3d 1332 (11th Cir. 2000) ("The First Amendment protects the right to gather information about what public officials do on public property, and specifically, a right to record matters of public interest."). Simply stated, it is difficult to understand how a government can forbid or punish the public from recording officials' activities that occur in public spaces when R.C. § 2933.52(B)(4) permits such conduct.

Here, Defendants take the position that it may forbid and even punish the public for recording hearings that the BTA livestreams. However, these hearings occur entirely within the public domain. Anyone in the entire world can watch a steamed BTA hearing online without a password, notice, or permission. The BTA has no clue who is watching these hearings. Therefore, it is not even logical or rational, let alone narrowly tailored to a significant government purpose, to forbid or punish Ohio citizens from recording virtual hearings that people across the entire globe could record.

3.  <u>Hicks had a right to record Defendants' hearings under R.C. § 2933.52(B)(4) and OAC § 5717-1-16(H).</u>

Ohio is considered a "one-consent" state, which means that it is generally lawful for a person to record conversations he is a part of.  In fact, R.C. § 2933.52(B)(4) permits an individual to record conversations without announcing he is recording his conversation.  Consequently, it is not logical that any person would expect that his or her conversations in a public setting are not exposed to potential recording.  In addition, without some express rule forbidding a person from recording his own conversations, it is not reasonable to conclude that any person has notice that he may not record conversations that he is a part of.

Here, Defendants' own regulations notify that public that all its hearings (1) are open to the public, and (2) that that "may be recorded." OAC § 5717-1-16(H) Therefore, not only was there no express rule usurping Hicks's general ability to record his own conversations under R.C. § 2933.52(B)(4), Defendants' own regulations expressly reinforce the lawfulness of Hicks's desire to record hearings that are open to the public and "may be recorded."  Consequently, because it is lawful for Hicks to record hearings under both R.C. § 2933.52(B)(4) and OAC § 5717-1-16(H), Hicks was engaged in protected speech and information gathering when he was trying to record these public hearings, especially his own.  Defendants' ad hoc decision to restrain these rights because Ms. Bridge found an expressive recording/viewpoint "confrontational" was not reasonable.

4.  <u>The Defendants unlawfully deprived Hicks and the public of their rights under Ohio law to record BTA hearings and meetings.</u>

Even though in the context of the Open Meetings Act, the Ohio Attorney General long ago advised that Ohio governments may not create regulations that result in a blanket ban of recording government proceedings.  1988 Ohio Atty.Gen.Ops. No. 88-087 (concluding that governments

may not ban recordings of government proceedings based upon an analysis of the First Amendment of the Ohio and United States constitutions). The Open Meetings Act does not expressly forbid governments from banning recordings. *Id.* However, because the Open Meetings Act expressly requires that all meetings are open to the public, Ohio case law has determined that it is unlawful for Ohio governments to ban all recordings of their proceedings. See *Id; Kline v. Davis,* 2001-Ohio-2625, *8 (4th Dist. 2001)*; McVey v. Carthage Twp. Trustees,* 4th Distr. Athens No. 04CA44, 2005-Ohio-2869 (4th Dist. 2005). Thus, in Ohio, when a published rule provides that a government's proceedings shall remain "open to the public," Ohio law creates a vested right for the public to record those proceedings, and that mandate is not discretionary.

"Procedural due process requires that a person be afforded notice and a right to be heard before the state deprives him of a property or liberty interest." *Jahn v. Farnsworth*, 617 Fed. App'x at 459. States may create liberty interests through statutes, rules, **regulations**, or policy statements. *Doe v. Sullivan County, Tenn.*, 956 F.2d at 557-58. The use of mandatory language that limits the decisionmaker's discretion will support the conclusion that the State has created a liberty interest. Id. (citing Thompson, 490 U.S. at 463, 109 S.Ct. at 1910). The BTA's own regulations create a mandatory right of all citizens in front of the BTA to record the BTA's hearings. Under OAC § 5717-1-16(H), the BTA's regulations mandate the following:

> All hearings before the board **shall be open to the public**. **Hearings may be recorded**, and such recordings shall be made available for examination at the board's office. (emphasis added).

In addition, under OAC § 5717-1-22(I), the BTA regulates that the [c]onsent to film, photograph, or record meetings of the board shall be obtained from the chairperson of the board, or with written consent of two members of the board, prior to the start of the meeting." This Rule expressly requires consent and empowers the BTA to unlawfully deprive people the right to record

its open meetings in violation of Ohio law. Under Ohio law, governments shall not forbid recordings when the law requires their meeting to remain open to the public. 1988 Ohio Atty.Gen.Ops. No. 88-087; *Kline,* 2001-Ohio-2625, \*8. Therefore, Hicks has a vested interest in recording BTA hearings and meetings. And the BTA's position concerning both its hearings and its meetings conflicts with the Attorney General's own advisory guidance on the matter. 1988 Ohio Atty.Gen.Ops. No. 88-087.

Defendants unlawfully stripped Hicks of his right to record the BTA's activities, and the BTA's ban on the public recording it hearings violates Ohio law generally.

### III.     CONCLUSION

Accordingly, Christopher Hicks respectfully requests that this Court finds for him under all Counts as a matter of law because the Defendants unlawfully banned Hicks's access to hearings, restrained his expression, retaliated against his speech, robbed him of due process, and forbid him to record the BTA's hearings, Hicks request that this Court enjoins Defendants' unlawful conduct, and awards him his damages, fees, and costs.

Respectfully submitted,

**/s/ Matt Miller-Novak**
Matthew Miller-Novak (0091402)
Barron, Peck, Bennie & Schlemmer
3074 Madison Road
Cincinnati, Ohio 45209
Phone: (513) 721-1350
Fax: (513) 721-5029
MMN@BPBSLaw.com

**s/ Nicholas R. Owens**
NICHOLAS R. OWENS (Ohio Bar No. 0089574)
The Law Office of Nicholas R. Owens
88 Station Drive
Georgetown, Ohio 45121
Phone: (513) 706-2634
Email: nick@nickowenslaw.com

Counsel for Plaintiff Christopher Hicks

## CERTIFICATE OF SERVICE

I hereby certify that an exact copy of the foregoing document was provided via the Court's

CM/ECF system and/or by electronic mail on the 26th day of April 2024.

s/ Matt Miller-Novak
Matt Miller-Novak (0091402)