## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

**CHRISTOPHER HICKS,**

        **Plaintiff,**

     **v.**

**KATHLEEN CROWLEY,** *et al.*,

        **Defendants.**

:

:

:

**Case No. 2:22-cv-2204**
**Chief Judge Sarah D. Morrison**
**Magistrate Judge Chelsey M. Vascura**

## <u>OPINION AND ORDER</u>

Christopher Hicks is a self-proclaimed "government transparency advocate" who brought this suit after the Ohio Board of Tax Appeals (the "BTA") refused to let him record certain public hearings and then banned him from hearings unless he was a party to a proceeding. Naming the BTA and its three Board Members as defendants in their personal and official capacities, Mr. Hicks alleges that they violated his First and Fourteenth Amendment rights.[1] His claims are brought under 42 U.S.C. § 1983.

This matter is before the Court on Mr. Hicks's Motion for Summary Judgment and Defendants' Motion for Partial Summary Judgment. (Pl.'s Mot., ECF No. 56; Defs.' Mot., ECF No. 57.) The motions are fully briefed and ripe for consideration. For the reasons below, Mr. Hicks's Motion for Summary Judgment is

---

[1] Mr. Hicks also brought an Ohio Open Meeting Act claim and named Kathleen Crowley as a party, but both were dismissed by the Court. (Jan. 20 Opinion, ECF No. 34.) The Court also dismissed Mr. Hicks's claims to the extent he sought damages against the BTA's Board Members in their official capacities. (*Id.*)

**GRANTED** in part and **DENIED** in part, and Defendants' Motion for Partial Summary Judgment is **GRANTED**.

## I. STATEMENT OF FACTS

The BTA is Ohio's administrative tax court, resolving justiciable disputes between parties in appeals from decisions, orders, determinations, and actions of the tax commissioner, tax administrative agencies, county budget commissions, and county boards of revision. Ohio Rev. Code § 5703.02. It is created by statute to hear appeals from decisions of county boards of revision concerning the valuation of real property for tax purposes. *Id.* David Harberger is the Chair of the BTA, Jasmine Clements is its Vice Chair, and Jeffrey Caswell is a board member (the "Board Members").

The BTA conducts two kinds of meetings: (i) nonadjudicatory meetings when the BTA conducts its business not involving tax disputes between parties; and (ii) adjudicatory hearings at which the parties to a tax appeal may present evidence on a specific tax dispute. *See* Ohio Admin. Code §§ 5717-1-16, 5717-1-22. Both types of meetings are open to the public, but the BTA has separate rules for each. *Id.* This case concerns the adjudicatory hearings.

BTA adjudicatory hearings proceed in a "similar manner to a civil action, with witnesses to be sworn and subject to cross-examination." *Id.* § 5717-1-16(G). For minor disputes, the BTA also has a "small claims" docket where parties resolve disputes "quickly, inexpensively, and fairly, without requiring a formal hearing or the services of an attorney." *Id.* § 5717-1-08(A).

All non-small claims hearings either have a court reporter present or are audio recorded by the BTA; any member of the public can request a copy of a transcript or audio recording. (Teaford Aff., ECF No. 57-1, PAGEID # 624.) The public can take notes at any hearing. (*Id.*)

### A. Mr. Hicks tried to record several BTA hearings.

In 2021, Mr. Hicks attended BTA hearings on October 20, and on December 2 and 6.

### 1. The October 20 Hearing

On October 20, 2021, Mr. Hicks attended an in-person BTA hearing to which he was a party. (Hicks Aff., ECF No. 56-1, PAGEID # 599–600.) He brought with him a camera, which he set up to the side of the room and started to record the proceedings. (*Id.* at 600.) Theresa Bridge (the presiding hearing officer) asked Mr. Hicks to stop recording. (*Id.* at 600; Bridge Aff., ECF No. 57-2, PAGEID # 629.) When Mr. Hicks refused to stop recording, Ms. Bridge canceled the hearing, and it was not rescheduled. (Hicks Aff., PAGEID # 600; Bridge Aff., PAGEID # 629.)

### 2. The December 2 Hearings

On December 2, 2021, Mr. Hicks returned to the BTA to observe hearings. (Hicks Aff., PAGEID # 601.) He had previously told BTA's Executive Director Kathleen Crowley that he intended to attend and record the hearings but when he arrived, he was detained in the building lobby by a BTA employee. (*Id.*) Mr. Hicks was then escorted by two Highway Patrol troopers to the BTA offices, where he was informed that the hearings that day were by telephone. (*Id.*) Before driving to

3

Columbus that day, Mr. Hicks had checked the BTA's online docket, which did not indicate that the hearings were by telephone and there was no information on how to call-in to the hearings. (*Id.*) When he asked how he (or any citizen) would have known the hearings were telephonic and how to access the telephonic hearings, Ms. Crowley told him that he would have had to call the BTA. (*Id.* at PAGEID # 602.) Mr. Hicks was then provided the call-in information for the hearings. (*Id.*) Mr. Hicks tried to use the BTA waiting area to call-in, but he was told he had to leave and was threatened with arrest if he did not. (*Id.*) By the time Mr. Hicks got to his car to call-in to the first hearing, it was over. (*Id.*)

Mr. Hicks joined two telephonic small claims hearings that day that were being presided over by Ms. Bridge. (Bridge Aff., PAGEID # 630.) When he called into the first hearing, he told Ms. Bridge that he would be recording the hearing, and she responded that he could not do so. (*Id.*) It is undisputed that Mr. Hicks then "argued at length about his right to record," so Ms. Bridge ended the hearing. (*Id.*) When Mr. Hicks called back for the next hearing, the same thing happened. (*Id.*) Both hearings were rescheduled. (*Id.*)

### 3. The December 6 Hearing

On December 6, 2021, Mr. Hicks attended an in-person hearing. (Hicks Aff., PAGEID # 603.) Prior to the hearing, he requested to record it using a form that he created and emailed to Ms. Crowley. (*Id.* at PAGEID #602.) On the morning of December 6, the BTA emailed a response to his request stating that a decision

would be made at each hearing. (*Id.* at PAGEID # 603.) Mr. Hicks did not see that response before going to the BTA. (*Id.*)

When he arrived at the BTA, Mr. Hicks entered an ongoing hearing where Chief Attorney Examiner Kody R. Teaford was presiding. (Teaford Aff., PAGEID # 623.) Mr. Teaford denied Mr. Hicks's request to record the hearing. (*Id.*) Mr. Hicks says that he then calmly asked for clarification as to the basis of the denial and that he did not approach Mr. Teaford. (Hicks Aff., PAGEID # 603.) Mr. Teaford says that Mr. Hicks approached his bench and disrupted the hearing by waving media request forms at him. (Teaford Aff., PAGEID # 623.) The hearing transcript reflects that Mr. Teaford repeatedly told Mr. Hicks to step away from the bench. (Dec. 6 Hearing Transcript, ECF No. 57-1, PAGEID # 628.) He also told Mr. Hicks that he was interrupting the hearing and could not record it, to which Mr. Hicks responded "You're interrupting yourself. I'm just coming in as a citizen." (*Id.*) At that point, Mr. Teaford requested that Mr. Hicks be removed for failing to comply with a court order. (*Id.*) A Highway Patrol trooper then escorted Mr. Hicks out of the hearing. (Teaford Aff., PAGEID # 624; Hicks Aff., PAGEID # 603.) As a result, Mr. Hicks did not observe all the hearings he wanted to see that day. (Hicks Aff., PAGEID # 603.)

## B. The BTA bans Mr. Hicks from attending future adjudicatory hearings.

Shortly after he was removed on December 6, the BTA permanently banned Mr. Hicks from attending any adjudicatory hearings other than those to which he is

a party ("the Dec. 9 Ban").[2] (*Id.*; Dec. 9 Ban, ECF No. 56-2, PAGEID # 607.) The stated reason for the Dec. 9 Ban was Mr. Hicks's conduct on December 2 and December 6 that caused the hearings not to go forward. (Hicks Aff., PAGEID # 604; Dec. 9 Ban, PAGEID # 607.) The Dec. 9 Ban was signed by all three Board Members and is indefinite—it does not provide an expiration date or a procedure by which Mr. Hicks can appeal it. (Dec. 9 Ban, PAGEID # 607.) Mr. Hicks sought reconsideration of and tried to challenge the Dec. 9 Ban, but no one from the BTA responded to him. (Hicks Aff., PAGEID # 604.)

## II.    STANDARD OF REVIEW

### A.    Summary Judgment

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant has the burden of establishing there are no genuine issues of material fact, which may be achieved by demonstrating the non-moving party lacks evidence to support an essential element of its claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1388–89 (6th Cir. 1993). The burden then shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56). When evaluating a motion for summary judgment, the evidence must be viewed

---

[2] The BTA also banned Mr. Hicks's wife from attending BTA hearings, but she is not a party to this action. (*See* ECF No. 56-3.)

in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).

A genuine issue exists if the non-moving party can present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339–40 (6th Cir. 1993). In other words, "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (concluding that summary judgment is appropriate when the evidence could not lead the trier of fact to find for the non-moving party).

## III.    ANALYSIS

Four of Mr. Hicks's claims remain: Claim 1 that the Defendants violated his First Amendment right of access by excluding him from the December hearings and by issuing the Dec. 9 Ban prohibiting him from all future hearings to which he is not a party; Claim 2 that the Defendants violated his Fourteenth Amendment right to procedural due process by issuing the Dec. 9 Ban without notice and an opportunity to be heard; Claim 3 that the Defendants violated his First Amendment rights by prohibiting him from recording hearings; and Claim 4 that Defendants retaliated against him for exercising his First Amendment right to record.

Mr. Hicks moves for summary judgment on all four of his claims. Defendants move for partial summary judgment, arguing: (i) the Board Members are entitled to qualified immunity in their personal capacities on

7

Claims 1, 3, and 4; and (ii) they did not violate Mr. Hicks's rights on Claim 1 as to the December hearings or on Claims 3 and 4.

The Court will first address whether the BTA is a "person" under 42 U.S.C. § 1983 before addressing qualified immunity and the parties' arguments on the merits.

### A.    Mr. Hick's § 1983 Claims Against the BTA

"To state a claim under 42 U.S.C. § 1983, a plaintiff must set forth facts that, when construed favorably, establish (1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a *person* acting under the color of state law." *Doe v. Miami Univ.*, 882 F.3d 579, 595 (6th Cir. 2018) (emphasis added) (quoting *Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 562 (6th Cir. 2011)).

A defendant must be a "person" to be held liable for any alleged deprivation under § 1983. "[N]either a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989); *see also Nuovo v. The Ohio State Univ.*, 726 F. Supp. 2d 829, 850 (S.D. Ohio 2010) (Frost, J.) (quoting *Henricks v. Pickaway Corr. Inst.*, No. 2:08-cv-580, 2009 WL 89200, at *2) (S.D. Ohio Jan. 7, 2009) (Smith, J.) (holding that OSU Medical Center is an agency of the State of Ohio and it cannot be held liable under § 1983). While state officials may be held liable under § 1983 when sued for injunctive relief, the State may not. *See Will*, 491 U.S. at 71 n. 10 (citing *Kentucky v. Graham*, 473 U.S. 159, 167 n. 14 (1985); *Ex parte Young*, 209 U.S. 123, 159–160 (1908)) ("Of

8

course a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.'")

Mr. Hicks acknowledges that the BTA is an agency of the State of Ohio. (Mot., PAGEID # 577 (referring to BTA as a "state agency").) As such, it is not a "person" and Mr. Hicks's § 1983 claims against it are **DISMISSED**.

### B. Mr. Hicks's § 1983 Claims Against the Board Members

Because the Board Members have raised qualified immunity as a bar to the extent that Mr. Hicks seeks monetary damages from them in their personal capacities on Claims 1, 3, and 4, Mr. Hicks bears the burden of proving that they are not entitled to qualified immunity for those claims. *Davenport v. Causey*, 521 F.3d 544, 550 (6th Cir. 2008).

Qualified immunity is a question of law. *See Mingus v. Butler*, 591 F.3d 474, 479 (6th Cir. 2010) (citing *Farm Labor Org. Comm. v. Ohio State Highway Patrol*, 308 F.3d 523, 531 (6th Cir. 2002)). To determine whether a defendant is entitled to qualified immunity at the summary judgment stage, the Court asks two questions: (1) whether plaintiff has demonstrated a genuine issue of material fact as to whether defendant violated plaintiff's constitutional right, and (2) whether the right at issue was "'clearly established'" at the time of defendant's alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). It does not matter which query is addressed first; for a finding of that they are entitled to immunity, both must be answered in the affirmative. *Id.* at 236–42.

### 1.    First Amendment Right of Access

In Claim 1, Mr. Hicks argues that the First Amendment provides him with a right of access to BTA hearings and that the Board Members violated this right when they excluded him from the December hearings and issued the Dec. 9 Ban.

There exists "a limited First Amendment right of access to certain aspects of the executive and legislative branches." *Detroit Free Press v. Ashcroft*, 303 F.3d 681, 695 (6th Cir. 2002). The Court previously found that this right of access applies to BTA hearings (Jan. 20 Opinion, PAGEID # 281), and the Board Members do not contest this finding now (Defs.' Mot., PAGEID # 614). Rather, the Board Members argue that they did not violate Mr. Hicks's right of access with respect to the December hearings because they excluded him for being disruptive during those hearings. (*Id.*, PAGEID # 615.) They also argue they are entitled to qualified immunity with respect to the Dec. 9 Ban because Mr. Hicks's right of access to BTA hearings was not clearly established at the time they issued the Dec. 9 Ban. (Defs.' Opp. Pl.'s Mot., ECF No. 63, PAGEID # 873.)

### a.    The Board Members did not violate Mr. Hicks's right of access with respect to the December hearings.

The First Amendment right of access is not absolute; it may be curtailed when "'denial [of access] is necessitated by a compelling governmental interest, and is narrowly tailored to serve that interest.'" *Detroit Free Press*, 303 F.3d at 705 (quoting *Globe Newspaper Co. v. Superior Ct.*, 457 U.S. 596, 606–7 (1984)). When curtailing a citizen's access to a government proceeding, the government entity must articulate what interest it is protecting and must make "'findings specific

enough that a reviewing court can determine whether the closure order was properly entered.'" *Press-Enterprise Co. v. Superior Ct.*, 478 U.S. 1, 9–10 (1986) (quoting *Press-Enterprise Co. v. Superior Ct.*, 464 U.S. 501, 510 (1984)). For example, a citizen can be removed for disrupting a government proceeding. *See Mezibov v. Allen*, 411 F.3d 712, 718 (6th Cir. 2005) (there is no right for spectators "to interrupt a judicial proceeding").

As Mr. Hicks acknowledges, Defendants have a compelling interest in orderly and efficient hearings and they have the right to exclude him if he is disruptive. (Jan. 16 Opinion, PAGEID # 281.) He disputes that he was disruptive during the December hearings. (Pl.'s Mot., PAGEID # 590.)

Start with the December 2 hearings. When Mr. Hicks arrived at the BTA's offices, he was given the call-in information for that day's telephonic hearings. The first hearing ended before Mr. Hicks got to his car to call-in to it. Mr. Hicks then called into two small claims hearings. It is undisputed that, during both hearings, he argued with Ms. Bridge when she told him he could not record the proceedings, causing her to end both hearings. Thus, a reasonable jury could only conclude that Mr. Hicks disrupted the December 2 hearings. The Board Members did not violate his right of access by ending the hearings he called into that day due to his disruptive behavior.

As to the December 6 hearing, Mr. Hicks had previously submitted a request to record to the hearing but was told when he arrived that he could not. While Mr. Hicks claims that he never approached the hearing officer, even if a jury were to

believe his testimony on this point, the transcript of the December 6 hearing reveals he disrupted the proceedings by arguing with Mr. Teaford after Mr. Teaford denied his request to record the hearing. Thus, a reasonable jury could only conclude that Mr. Hicks disrupted the December 6 hearing. Under the circumstances, the Board Members did not violate his right of access by removing him that day.

Because the Board Members did not violate Mr. Hicks's right of access to the December hearings, they are entitled to qualified immunity on Claim 1 as to these hearings. The Court **GRANTS** summary judgment to the Board Members and **DENIES** summary judgment to Mr. Hicks on Claim 1 as to the December hearings.

### b. The Board Members violated Mr. Hicks's clearly established right of access when they issued the Dec. 9 Ban.

The Board Members concede that the Dec. 9 Ban violated Mr. Hicks's right of access. (Defs.' Reply, ECF No. 64, PAGEID # 877.) They argue, however, that such a right was not clearly established at the time they issued the Dec. 9 Ban so they are entitled to qualified immunity.

For a right to be clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate[,]" although there need not be a case "directly on point." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011). The right must be dictated by "'controlling authority in [the] jurisdiction at the time of the incident' or [by] 'a consensus of cases of persuasive authority such that a reasonable [official] could not have believed that his actions were lawful.'" *Kent v. Oakland Cnty.*, 810 F.3d 384, 395 (6th Cir. 2016) (quoting *Wilson v. Layne*, 526 U.S. 603, 617

12

(1999)); *see also Dist. of Columbia v. Wesby*, 583 U.S. 48, 63 (2018). "The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply." *Wesby*, 583 U.S. at 63. "This requires a high 'degree of specificity.'" *Id.* (quoting *Mullenix v. Luna*, 577 U.S. 7, 17 (2015) (per curiam)). Nevertheless "there need not be a case with the exact same fact pattern or even 'fundamentally similar' or 'materially similar' facts; rather, the question is whether the defendants had 'fair warning' that their actions were unconstitutional." *Cummings v. City of Akron*, 418 F.3d 676, 687 (6th Cir. 2005) (quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)). That is, there must exist a precedent where "an officer acting under similar circumstances ... was held to have violated" the constitutional provision at issue. *White v. Pauly*, 580 U.S. 73, 79 (2017).

At the time Dec. 9 Ban was issued, it was clearly established that a government entity cannot categorically ban access to its public proceedings without violating the First Amendment. Although there are no controlling decisions from the Supreme Court or the Sixth Circuit, there has long existed a consensus of persuasive authority that a categorical ban of a citizen from government proceedings violates the First Amendment such that a reasonable official could not have believed that his or her actions were lawful when issuing such a ban.

To start, at least two courts in the Sixth Circuit have found that such a ban violates the Constitution. In *Ritchie v. Coldwater Cmty. Sch.*, Mr. Ritchie challenged a School District's permanent ban prohibiting him from entering the School

13

District's property after he refused to leave the property on a particular day. 947 F. Supp. 2d 791, 811–13 (W.D. Mich. 2013), *clarified on denial of reconsideration*, No. 1:11-CV-530, 2013 WL 12421757 (W.D. Mich. July 29, 2013). Although the School District could exclude Mr. Ritchie from its property on the day he refused to leave, the Western District of Michigan denied qualified immunity to the official responsible for the permanent ban because it violated Mr. Ritchie's clearly established right to attend School Board meetings held on the School District's property. *Id.*

Similarly, in *Seum v. Osborne*, Mr. Seum alleged a violation of his First Amendment right of access when he was banned from the third floor of Kentucky's Capitol Annex for making racist comments in front of state employees. No. 3:17-CV-00069-GFVT, 2018 WL 4685442, at *2–3, 5 (E.D. Ky. Sept. 28, 2018). Although the state's interest in the ban of Mr. Seum was to prevent future harassment of its employees, the Eastern District of Kentucky concluded that "the unequivocal and permanent ban of Seum from the third floor of the Capitol Annex suggests this restriction is not narrowly tailored to serve that state interest." *Id.* at *3.

Outside of the Sixth Circuit, courts have uniformly held that categorical bans of access to government proceedings are unconstitutional. In *Cyr v. Addison Rutland Supervisory Union*, a school district issued two notices of trespass prohibiting Mr. Cyr from entering its property for two years after he intimidated school staff by personally delivering letters to the school on "nearly a daily basis" and engaging in other threatening conduct. 60 F. Supp. 3d 536, 539–42 (D. Vt.

14

2014). When Mr. Cyr challenged his ban, the Vermont court analyzed the legality of his claim as a restriction as to time, place, and manner of speech in a public or limited public forum: "a notice against trespass targeting an individual rather than the public generally is equivalent to a injunction against speech and . . . '[i]njunctions . . . carry greater risks of censorship and discriminatory application than do general ordinances.'" *Id.* (quoting *Madsen v. Women's Health Ctr.*, 512 U.S. 753, 764 (1994)). That court concluded that the school district violated Mr. Cyr's First Amendment right of access because its "categorical ban" was not "narrowly tailored":

> Protecting the safety of school staff is undoubtedly a significant government interest. *See Lovern v. Edwards*, 190 F.3d 648, 655–56 (4th Cir. 1999) (school officials have discretion to remove parents from school property in response to a threat of disruption). A categorical ban of a single individual from open school board meetings, however, is not narrowly tailored and does not leave open ample alternative channels of communication.

*Id.* at 547–8. Both the Northern District of Georgia and the Northern District of Indiana have followed *Cyr. See Mama Bears of Forsyth Cnty. v. McCall*, 642 F. Supp. 3d 1338, 1362 (N.D. Ga. 2022) (holding that a permanent ban of the plaintiff from school board meetings is unreasonable and unconstitutional); *Stevens v. Sch. City of Hobart*, No. 2:13-CV-336-PRC, 2015 WL 4870789, at *14 (N.D. Ind. Aug. 6, 2015) (holding that a ban of the plaintiff from school property is not narrowly tailored to achieve a school district's interest in preserving order).

The Middle District of Florida has likewise instructed that a categorical ban on attendance at public meetings is unlawful. *Brown v. Jacksonville*, No. 3:06-CV-

122-J-20MMH, 2006 WL 385085, at *1–2, 8 (M.D. Fla. Feb. 17, 2006). In that case, the court enjoined the City of Jacksonville's three-month ban prohibiting the plaintiff from attending City Council meetings and Committee meetings even though she had failed to comply with Council rules and had been charged with resisting an officer and disturbing a lawful assembly:

> [T]he City went beyond expelling her from the single meeting at which she was disruptive.
> . . . .
> Banning Plaintiff from future meetings is not a restriction that is "narrowly tailored" to achieve the significant governmental interest of running the meetings efficiently, while successfully preventing her disruptive behavior. Although the City does not have to use the "most appropriate method" of restricting the Plaintiff, it should nonetheless use a directive that is more "narrowly tailored" than a sweeping ban from future meetings for months.

*Id.* at *3–4.

Finally, the Second Circuit has similarly found that a categorical ban prohibiting a person from a courthouse except for litigation to which he is a party violates his First Amendment right of access to judicial proceedings. *Huminski v. Corones*, 396 F.3d 53, 87–88 (2d Cir. 2005). While the state officials in that case could ban Mr. Huminski on a particular day from a particular courthouse when he created a security risk, a categorical ban on Mr. Huminski from all future proceedings at any courthouse within the county except for those to which he is a party "was plainly overbroad in light of its duration, geographical scope, and scope of proceedings covered[.]" *Id.* at 88.

This robust consensus of authority put the Board Members on notice that the Dec. 9 Ban violated Mr. Hicks's First Amendment right of access. They are not

entitled to qualified immunity and the Court **GRANTS** summary judgment to Mr. Hicks on Claim 1 as to the Dec. 9 Ban against the Board Members in both their official and personal capacities.

## 2. Fourteenth Amendment Procedural Due Process

In Claim 2, Mr. Hicks claims the Board Members violated his Fourteenth Amendment procedural due process rights when they issued the Dec. 9 Ban without providing him an opportunity to be heard prior to or after its issuance. The Board Members do not address Mr. Hicks's procedural due process claim in their summary judgment briefing.

The Supreme Court has established that "[p]rocedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). "Procedural due process generally requires that the [government] provide a person with notice and an opportunity to be heard before depriving that person of a property or liberty interest." *Warren v. City of Athens, Ohio*, 411 F.3d 697, 708 (6th Cir. 2005).

As discussed above, the Board Members deprived Mr. Hicks of his First Amendment right of access when they issued the Dec. 9 Ban. While the Dec. 9 Ban cites Mr. Hicks's disruptive behavior at prior hearings as the basis for the Ban, it is undisputed that the Board Members issued the Ban without first offering Mr. Hicks an opportunity to be heard on the matter. And neither the Dec. 9 Ban itself nor the

Board Members provided Mr. Hicks with an opportunity to appeal. Mr. Hicks was deprived of any process with regard to the Dec. 9 Ban.

Accordingly, the Court **GRANTS** summary judgment to Mr. Hicks on Claim 2 against the Board Members in both their official and personal capacities.

### 3. First Amendment Right to Record

For Claim 3, Mr. Hicks argues that the Board Members unlawfully prohibited him from recording BTA hearings for two reasons: (a) the act of recording BTA hearings is expressive conduct protected by the First Amendment; and (b) various provisions of Ohio law provide him with a right to record BTA hearings. He also argues that the Board Members are not entitled to qualified immunity on Claim 3 because it was clearly established that government agencies may not violate their own regulations. In response, the Board Members contend that Mr. Hicks has no right to record BTA hearings and, even if he does have such a right, that they are entitled to qualified immunity because such a right was not clearly established.

#### a. Mr. Hicks does not have a First Amendment right to record BTA hearings.

"[T]he act of merely recording a government meeting is not expressive activity." *Knight v. Montgomery Cnty.*, No. 3:19-CV-00710, 2019 WL 13109761, at *2 (M.D. Tenn. Aug. 16, 2019); *cf. Hils v. Davis*, 52 F.4th 997, 1001 (6th Cir. 2022) ("A prohibition on recording speech is not a prohibition on speaking.") Thus, challenges to restrictions on video-recording government activities are challenges based on the right of "access to information as opposed to the right to expression." *S.H.A.R.K. v.*

18

*Metro Parks Serving Summit Cnty.*, 499 F.3d 553, 559 (6th Cir. 2007) (analyzing challenge to ban on video-recording of government's deer-culling activities in park as right of access to information challenge); *Maple Heights News v. Lansky*, No. 1:15CV53, 2017 WL 951426, at *3 (N.D. Ohio Mar. 10, 2017) (analyzing challenge to removal of video camera during city council meeting as right of access to information challenge).

"Although access [to information] cases are rooted in First Amendment principles, they have developed along distinctly different lines than have freedom of expression cases." *S.H.A.R.K.*, 499 F.3d at 559 (collecting cases). Collection of information is an important aspect of the First Amendment, but the ability to gather information is not an absolute right; "[n]either the First Amendment nor the Fourteenth Amendment mandates a right of access to government information or sources of information within the government's control." *Id.* (quoting *Houchins v. KQED, Inc.,* 438 U.S. 1, 15 (1978)). Relevant here, the First Amendment does not necessarily create a federal constitutional right to record meetings, "particularly where the public is granted alternative means of compiling a comprehensive record." *Maple Heights*, 2017 WL 951426, at *3 (quoting *Whiteland Woods v. Twshp. of W. Whiteland*, 193 F.3d 177, 183 (3d Cir. 1999)). For example, a government entity may place limits on video-recording when the public has access to audio-recordings. *Id.* at *3.

The constitutionality of a limit on access to information is analyzed in two steps. First, the court must determine whether the rule prohibiting the plaintiff's

access to information "'selectively [ ] delimit[s] the audience.'" *S.H.A.R.K.*, 499 F.3d at 560–61 (quoting *D'Amario v. Providence Civic Ctr. Auth.*, 639 F. Supp. 1538, 1543 (D.R.I. 1986) *aff'd*, 815 F.2d 692 (1st Cir.), *cert. denied*, 484 U.S. 859, 108 (1987)). If the rule does not selectively delimit the audience, the restriction is upheld if it rationally relates to the government's interest; if the rule does selectively delimit the audience, a stricter level of scrutiny must be applied. *Id.* Second, the court must apply the applicable level of scrutiny to the government's stated interest to determine whether the interest is sufficiently related to the restriction. *Id.*

### 1. The BTA's no-recording policy does not selectively delimit the audience.

There is no evidence that the BTA's no-recording policy "selectively delimits the audience." Rather, the prohibition of all recording applies to everyone except for recordings made by BTA staff. (Harberger Dep., ECF No. 57-4, PAGEID # 755 ("There is not a specific rule, but [the prohibition on recording BTA hearings] has been policy and my understanding of the policy that the only recording of any hearing is by the board itself.").)

Because the BTA's ban on recording does not selectively delimit the audience, the applicable standard of review is rational basis review. *S.H.A.R.K.*, 499 F.3d at 560. "The rational basis test requires the court to ensure that the government has employed rational means to further its legitimate interest." *Peoples Rts. Org., Inc. v. City of Columbus*, 152 F.3d 522, 532 (6th Cir. 1998). Using a rational basis review, a court usually will uphold regulations because "'the state's important regulatory interests are generally sufficient to justify [them].'" *Citizens for Legis. Choice v.*

*Miller*, 144 F.3d 916, 921 (6th Cir. 1998) (alteration in original) (quoting *Anderson v. Celebrezze*, 460 U.S. 780, 788 (1983)).

> ### 2. The no-recording policy is rationally related to the BTA's legitimate interest in protecting privileged communications.

The Board Members assert that the prohibition on recording BTA hearings protects privileged conversations and documents that could be picked up on a recording of a hearing. (Defs.' Mot., PAGEID # 617.) The BTA has a legitimate interest in protecting this privileged information; the BTA is Ohio's administrative tax court and its adjudicatory hearings proceed in a "similar manner to a civil action[.]" Ohio Rev. Code § 5717-1-16(G). As with any court hearing, represented parties may have off-the-record discussions regarding privileged information. Protecting privileged discussions during BTA hearings ensures free and open communication between parties and their attorneys and ensures that the hearings proceed in an orderly manner. *See In re Grand Jury Subpoenas*, 454 F.3d 511, 519 (6th Cir. 2006). And prohibiting the public from recording hearings is a reasonable method of furthering this interest. *Cf. McKay v. Federspiel*, No. 14-CV-10252, 2014 WL 7013574, at *7 (E.D. Mich. Dec. 11, 2014), *aff'd*, 823 F.3d 862 (6th Cir. 2016) (ban on use of electronics in the courtroom and courtroom hallway was a reasonable method of protecting legitimate interests of preventing the disruption of proceedings, witness intimidation, and jurors conducting online research); *Randle v. Lewis*, No. 23-CV-11370, 2024 WL 4295251, at *3 (E.D. Mich. Sept. 25, 2024) (city

council's prohibition on use of camera with bright light was a reasonable method of maintaining order during the meeting).

### 3. The public has alternative means to develop a record of BTA hearings.

The public, including Mr. Hicks, has alternative means to develop a comprehensive record of BTA hearings. All in-person BTA hearings are either transcribed by a court reporter or audio recorded, and the transcripts and recordings are available to the public upon request. Moreover, members of the public who attend hearings can take his or her own notes. As discussed above, Mr. Hicks has a right of access to BTA hearings so long as he does not disrupt them. He can take notes and can request copies of transcripts or recordings maintained by the BTA.

### 4. Mr. Hicks's arguments to the contrary fail.

The out-of-circuit cases on which Mr. Hicks relies to support his arguments to the contrary are inapplicable because they address recording encounters with law enforcement officers. *See Glik v. Cunniffe*, 655 F.3d 78, 83–84 (1st Cir. 2011) (finding First Amendment right to film police officers performing their duties in public spaces); *Fields v. City of Philadelphia*, 862 F.3d 353, 360 (3d Cir. 2017) (same); *Turner v. Lieutenant Driver*, 848 F.3d 678, 689–90 (5th Cir. 2017) (adopting *Glik*); *Am. C. L. Union of Ill. v. Alvarez*, 679 F.3d 583, 608 (7th Cir. 2012) (allowing the audio recording of the police in public spaces); *Askins v. Dep't of Homeland Sec.*, 899 F.3d 1035, 1044 (9th Cir. 2018) (acknowledging right to record law enforcement officers performing official duties in public places); *Smith v. City of Cumming*, 212

22

F.3d 1332 (11th Cir. 2000) (permitting the filming of police conduct subject to reasonable time place and manner restrictions).

Mr. Hicks also argues that the BTA's no-recording policy cannot serve the governmental purpose of protecting confidential information because anyone can record a live-streamed hearing "without a password, notice, or permission" and the BTA "has no clue who is watching these hearings." (Pl.'s Mot., PAGEID # 594.) But speculating that a policy could be violated does not demonstrate that the policy does not serve a governmental purpose. "Following that logic, any rule that could be broken would potentially be found to not serve the governmental interest for which it was enacted." *Knight v. Montgomery Cnty., Tennessee*, 592 F. Supp. 3d 651, 664 (M.D. Tenn. 2022) (rejecting argument that potential for attendees to violate prohibition on livestreaming county commission meetings meant that governmental interest was not served by the prohibition).

### b. Mr. Hicks cannot base a § 1983 claim on alleged violations of Ohio law.[3]

Claim 3 is brought under 42 U.S.C. § 1983. "Allegations of state law or state constitutional violations will not support a § 1983 claim. Similarly, a § 1983 claim may not be based upon a violation of state procedure that does not violate federal law." *Laney v. Farley*, 501 F.3d 577, 581 n. 2 (6th Cir. 2007) (citations omitted).

---

[3] To the extent Mr. Hicks tries to tie alleged violations of state law to a procedural due process deprivation, he did not plead this claim in his Complaint. "Parties who seek to raise new claims at the summary-judgment stage must first move to amend their pleadings under Federal Rule of Civil Procedure 15(a) before asserting the claims in summary-judgment briefing." *Davis v. Echo Valley Condo. Ass'n*, 945 F.3d 483, 496 (6th Cir. 2019) (collecting cases).

Accordingly, the Board Members' Motion for Partial Summary Judgment is **GRANTED** and Mr. Hicks's Motion for Summary Judgement is **DENIED** on Claim 3.

### 4. First Amendment Retaliation

Finally, for Claim 4, Mr. Hicks claims the Board Members retaliated against him for exercising his right to record BTA hearings. Thus, Claim 4 fails for the same reason Claim 3 fails—he does not have a First Amendment right to record BTA hearings. Accordingly, the Board Members' Motion for Summary Judgment is **GRANTED** and Mr. Hicks's Motion for Summary Judgment is **DENIED** on Claim 4.

## IV. CONCLUSION

Defendant BTA is **DISMISSED**.

Mr. Hicks's Motion for Summary Judgment (ECF No. 56) is **GRANTED** on Claim 1 as to the Dec. 9 Ban and on Claim 2. His motion is **DENIED** in all other respects.

The Board Members' Motion for Partial Summary Judgment (ECF No. 57) is **GRANTED**.

The issue of damages and/or other remedies on Claim 1 as to the Dec. 9 Ban and on Claim 2 remains for trial, which will be set in a separate order.

**IT IS SO ORDERED.**

/s/ Sarah D. Morrison
**SARAH D. MORRISON, CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

24