# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

**CHRISTOPHER HICKS,**

            **Plaintiff,**

**v.**

**KATHLEEN CROWLEY,** *et al.*,

            **Defendants.**

:

:

:

**Case No. 2:22-cv-2204**
**Chief Judge Sarah D. Morrison**
**Magistrate Judge Chelsey M. Vascura**

## OPINION AND ORDER

Christopher Hicks brought this action after the Ohio Board of Tax Appeals ("BTA"), its Executive Director, and its three Board Members permanently banned him from future BTA public hearings. He alleged that Defendants violated his First and Fourteenth Amendment rights. After motions practice, discovery, and an appeal to the Sixth Circuit Court of Appeals, this Court issued a Final Judgment that permanently enjoined the Board Members from enforcing that ban. (ECF No. 75.)

This matter is now before the Court on Mr. Hicks's Motion for Attorney Fees. (ECF No. 78.) His Motion is fully briefed and ripe for decision.

## I.      Factual and Procedural Background

The facts leading to the filing of this suit are fully set forth in the Court's February 14, 2015 Opinion and Order. (ECF No. 66.) For current purposes, the Court provides a summary of those facts.

In 2021, Mr. Hicks attended BTA hearings on October 20, and on December 2 and 6. At the October hearing, he tried to record the proceedings and refused to stop recording when instructed to do so by the presiding hearing officer; the presiding officer canceled the hearing. When he returned to the BTA on December 2, 2021, he was informed that the hearings that day were proceeding by telephone. When he tried to record the telephonic hearings, he was again told that he could not. The presiding hearing officer ended two hearings that day because of Mr. Hicks's efforts to record them. Then, on December 6, after an interaction with another hearing officer, Mr. Hicks was escorted out of a hearing by the Ohio State Highway Patrol.

Mr. Hicks's behavior led to the BTA issuing a permanent ban prohibiting him from attending any adjudicatory hearings other than those to which he is a party ("the December 9 Ban"). When the BTA refused to reconsider the Ban, Mr. Hicks filed this lawsuit.

The operative complaint was Mr. Hicks's Amended Complaint (ECF No. 5), in which he asserted that the Defendants violated his First Amendment rights of access and of expression (Claims 1, 3), denied him procedural due process under the Fourteenth Amendment (Claim 2), retaliated against him in violation of the First Amendment (Claim 4), and violated the Ohio Open Meetings Act (Claim 5). His federal claims were brought under 42 U.S.C. § 1983.

After considering the Defendants' Motion to Dismiss, the Court issued an Opinion and Order dismissing Claim 5 in its entirety, dismissing the BTA Executive Director (Defendant Crowley), and dismissing Claims 1 through 4 to the extent that

2

Mr. Hicks sought damages against the Defendants in their official capacities. (ECF No. 34.) At that time, the Court also issued a preliminary injunction prohibiting enforcement of the December 9 Ban. (*Id.*)

The parties then conducted discovery and attempted mediation. When they could not settle the dispute, they filed cross motions for summary judgment. After those motions were fully briefed, this Court issued an Opinion and Order that (1) dismissed the BTA, (2) granted summary judgment to the Board Member Defendants on Claim 1 to the extent that Claim addressed Mr. Hicks's right of access to the December hearings because they were entitled to qualified immunity, (3) granted summary judgment to Mr. Hicks on Claim 1 to the extent that Claim addressed the December 9 Ban and on Claim 2, and (4) granted summary judgment to the Board Member Defendants on Claims 3 and 4. ("the Feb. 14 Order," ECF No. 66.)

Defendants appealed the Feb. 14 Order to the Sixth Circuit Court of Appeals. (ECF No. 68.) The only issue appealed was this Court's denial of qualified immunity as to the individual claims asserted against the Board Members in Claim 1 (to the extent that Claim addressed the December 9 Ban) and Claim 2.

The Sixth Circuit ultimately agreed with Defendants, concluding that the December 9 Ban's unlawfulness was not clearly established and that the Board Members were entitled to qualified immunity on Claims 1 and 2. (ECF No. 72.) So this Court vacated that portion of the Feb. 14 Order and granted summary

3

judgment on qualified immunity grounds to the Board Members on Claims 1 and 2. (ECF No. 74.)

But the Sixth Circuit left undisturbed the Feb. 14 Order's grant of summary judgment to Mr. Hicks on Claim 1 and Claim 2 against the Board Members in their official capacities. (ECF No. 72, PageID 964.)  So this Court entered a final judgment against the Board Members on Claims 1 and 2 in their official capacities, permanently enjoining them from enforcing the December 9 Ban. (ECF Nos. 75, 76.)

As the prevailing party as to the permanent injunction and on his Claims 1 and 2 against the Board Members in their official capacities, Mr. Hicks now seeks an award of his reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988.

## II.    Analysis

For claims brought under 42 U.S.C. § 1983, courts may allow the prevailing party to recover reasonable attorney's fees. 42 U.S.C. § 1988(b). Defendants do not dispute that Mr. Hicks is a prevailing party and is entitled to recover some fees. Rather, they make several arguments that the fees sought are not reasonable.

### A. Mr. Hicks is entitled to recover attorney's fees incurred after Defendants' offer of judgment.

Defendants first argue that Mr. Hicks is not entitled to recover any legal fees incurred after it made an Offer of Judgment on February 23, 2023.

Offers of Judgment are governed by Rule 68 of the Federal Rules of Civil Procedure, which states, in relevant part:

> (a) Making an Offer; Judgment on an Accepted Offer. At least 14 days before the date set for trial, a party defending against a claim may serve on an opposing party an offer to allow judgment on specified

4

terms, with the costs then accrued. If, within 14 days after being served, the opposing party serves written notice accepting the offer, either party may then file the offer and notice of acceptance, plus proof of service. The clerk must then enter judgment.

(b) Unaccepted Offer. An unaccepted offer is considered withdrawn, but it does not preclude a later offer. Evidence of an unaccepted offer is not admissible except in a proceeding to determine costs.

...

(d) Paying Costs After an Unaccepted Offer. If the judgment that the offeree finally obtains is not more favorable than the unaccepted offer, the offeree must pay the costs incurred after the offer was made.

Fed. R. Civ. P. 68. Thus, Rule 68 is relevant to Mr. Hicks's Motion for Attorney Fees only if the judgment ultimately obtained is less favorable than Defendants' offer of judgment.

In determining the value of relief, the defendant bears the burden of showing that the Rule 68 offer was more favorable than the judgment. *See* Wright and Miller, § 3006.1 ("Rule 68 is actually a tool for defendant to use, and defendant alone determines the provisions of the offer. Since defendant has drafted those provisions, the courts generally interpret the offer against the defendant. Consistent with that, the burden should be on defendant to demonstrate that those provisions are in fact more favorable than what plaintiff obtained by judgment.").

So what did Defendants offer? They offered a monetary judgment in Mr. Hicks's favor in the amount of $35,001.00, inclusive of attorney's fees. Their offer of judgment also stated that Defendants would agree to:

1. BTA will remove the ban against Plaintiff Christopher Hicks and his wife, B.J. Hicks.

2.	BTA will maintain audio recordings and/or transcripts of all in-person hearings (including those with a virtual component), and it will make them available to the public, subject to the BTA's retention policy.

3.	BTA will provide on its website a clear way for the public to determine in-person hearings (including those with a virtual component) dockets by day/week and location or dial-in information for those hearings.

4.	BTA will provide and publish a media request form and it will enact a policy, or if necessary an administrative rule, for media requests to audio record in-person hearings (including those with a virtual component).

(ECF No. 79-1.)

Applying Rule 68 in the context of their offer, Defendants assert that the benefit Mr. Hicks secured in this action did not exceed these terms – arguing that the money, other concessions, and their offer to rescind the December 9 Ban is better than what Mr. Hicks obtained because he obtained "only an injunction, which made the recission of the Ban permanent." (Resp., PageID 1033.)

However, Defendants' arguments are insufficient to meet their burden to show that their Rule 68 offer was more favorable than the judgment secured by Mr. Hicks. They offered only a voluntary cessation of their illegal conduct, and a Court-issued injunction is more favorable than Defendants' simple agreement to rescind the December 9 Ban. Moreover, Defendants' argument ignores the fact that their monetary offer of judgment did not adequately compensate Mr. Hicks for the attorney's fees he had incurred at the time of the offer.

**1.** **The Offer of Judgment was less favorable than the final judgment because it included only a voluntary cessation of illegal conduct, not a permanent injunction.**

Nothing in Rule 68 suggests that a final judgment that contains only equitable relief is inherently less favorable than a Rule 68 offer that contains monetary relief. As the Sixth Circuit has recognized, in the Rule 68 context "a favorable judgment and an injunction can be more valuable to a plaintiff than damages." *Andretti v. Borla Performance Indus. Inc.*, 426 F.3d 824 (6th Cir. 2005). Defendants argue that this case is like *Andretti* and that case counsels a finding in their favor.

The *Andretti* case involved a dispute over race-car driver Mario Andretti's right of publicity; he sued a car-parts company (Borla Performance Industries, Inc.) for the non-permitted use of his name and image in its advertising, seeking both injunctive relief and damages. *Id.* at 828. After the parties stipulated to a preliminary injunction, Borla made an offer of judgment for $15,000 and an agreed permanent injunction. *Id.* Mr. Andretti rejected the offer, but was then awarded only an injunction with no damages on the merits of his claims. *Id.* As a result, Borla sought and was awarded its costs incurred after the date of the offer of judgment. *Id.* On appeal, the Sixth Circuit rejected Mr. Andretti's arguments that the injunction he received was more valuable than the injunction in Borla's Rule 68 offer – the Court concluded that both the offered injunction and the judgment's injunction equally prohibited Borla from engaging in the same conduct. *Id.* at 838.

7

The *Andretti* court's analysis is certainly helpful to this case, but it counsels a different result.

In this case, Defendants did not offer an agreed permanent injunction to Mr. Hicks; they offered only to "remove the ban against Plaintiff." This offer to "remove the ban" without a permanent injunction is the functional equivalent to cases in which defendants have claimed that their subsequent actions rendered a request for injunctive relief moot. In such situations, the Supreme Court has held that a defendant's voluntary cessation of allegedly illegal conduct does not moot a plaintiff's claim for injunctive relief. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 189 (2000). Doing so would "leave the defendant free to return to his old ways." *Id.* A case does not become moot by a defendant's voluntary cessation of the allegedly illegal conduct unless the defendant satisfies the "heavy burden of persuading the court that the challenged conduct cannot reasonably be expected to start up again ...." *Id.*; *see also Adarand Constructors, Inc. v. Slater*, 528 U.S. 216, 222 (2000) ("Voluntary cessation of challenged conduct moots a case only if it is 'absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.'").

Defendants have not argued that their offer of a voluntary cessation of the December 9 Ban is the equivalent of a Court-ordered permanent injunction. In fact, their offer of judgment and Mr. Hicks's permanent injunction would not equally have prohibited them from engaging in the same conduct in the future. A

8

permanent injunction is more favorable to Defendants' offer to remove the December 9 Ban.

### 2. The Offer of Judgment was less favorable than the final judgment because it did not provide for sufficient attorney's fees.

Rule 68 requires the Court to compare a settlement offer that includes attorney's fees with the "judgment that the [claimant] finally obtains." Fed. R. Civ. P. 68(d). The "judgment" used to make this apples-to-apples comparison includes not just the injunctive relief and any damages awarded, it also includes the claimant's pre-offer costs and fees actually awarded. *See Marek v. Chesny*, 473 U.S. 1, 7 (1985); *see also, e.g., Hescott v. City of Saginaw*, 757 F.3d 518, 528 (2014) (attorney's fees are included in the definition of "costs" under Rule 68 when fees are properly awardable as costs under the relevant substantive statute).

Because Mr. Hicks did not receive a monetary judgment, the Court need only ask whether his pre-offer fees and expenses were more than Defendants' offer of judgment of $35,001.00. *Cf. Doe v. Rutherford Cnty, Tenn. Bd. Of Educ.*, 86 F.Supp.3d 831, 847 (M.D. Tenn. 2015) (court conducted a two-step analysis: (1) determined what pre-offer fees and expenses were reasonable under the circumstances; and (2) added the value of the final award to that amount; then compare that number to the value of the offer).

All of the work done by attorney Jennifer Kinsley on this case was performed pre-offer between November 2021 and February 8, 2023. (ECF No. 78, PageID 1006-8). And, as discussed below, the reasonable fees for her work are $43,440.00.

Because the judgment obtained by Mr. Hicks is more favorable than Defendants' offer of judgment, Rule 68 does not apply and he may recover the reasonable attorney's fees incurred before and after the offer of judgment was made.

**B. Mr. Hicks is entitled to his reasonable attorney's fees.**

The Court calculates an award of attorney's fees by using the lodestar method, under which a reasonable hourly rate is multiplied by the number of hours reasonably expended on the litigation. *Lee v. Javitch, Block & Rathbone, LLP*, 568 F. Supp. 2d 870, 875 (S.D. Ohio 2008). Because of its objectivity, "there is a strong presumption that the lodestar figure is reasonable." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 554 (2010) (internal quotations omitted). The lodestar method is designed to attract competent counsel to vindicate a person's rights but is not intended to serve as a windfall for attorneys. *Coulter v. Tenn.*, 805 F.2d 146, 149 (6th Cir. 1986), abrogated on other grounds by *The Ne. Ohio Coal. for the Homeless v. Husted*, 831 F.3d 686, 692 (6th Cir. 2016).

### 1. Reasonable Hourly Rate

A "reasonable hourly rate" is "based on the 'prevailing market rate in the relevant community for lawyers of comparable skill and experience[.]'" *Yellowbook, Inc. v. Brandenberry*, 708 F.3d 837, 849 (6th Cir. 2013) (citation omitted).

Mr. Hicks primarily had three attorneys[1] during this litigation: Jennifer M. Kinsley, who billed at $400 per hour; Mathew Miller-Novak, who billed at $550 per

---

[1]Two others with Mr. Miller-Novak's firm also billed some time to this case: Attorney Keith G. Skylar billed at $375 per hour and Paralegal Ryann L. Brann billed at $125 per hour. (ECF No. 78, PageID 1011.) Defendants do not object to the rates or work of these two people.

hour; and Nicholas R. Owens, who billed at $275[2] per hour.

Defendants do not dispute that Ms. Kinsley's and Mr. Owens's hourly rates are reasonable. But they do argue that Mr. Miller-Novak's rate is not reasonable. In support of this, they point to another case in which Mr. Miller-Novak represented Mr. Hicks: *State ex rel. Christopher Hicks v. Clermont Cty. Bd. of Comm'rs*, Case No. CA2020-06-032. In that case, Mr. Hicks submitted the affidavit of attorney Louis Sirkin (the attorney who filed the instant Motion for Attorney Fees) opining that $350 per hour for Mr. Miller-Novak was a reasonable rate. (ECF No. 79-3, PageID 1069.) The Clermont County, Ohio Court of Common Pleas agreed and found that $350 per hour was reasonable for Mr. Miller-Novak's legal services. (ECF No. 79-2, PageID 1058.)

Mr. Hicks's Reply Memorandum does not respond to Defendants' arguments on Mr. Miller-Novak's hourly rate. He does not provide any explanation as to why the rate requested in this case is so much higher than the rate requested in that case. Though the Court recognizes that Mr. Sirkin's affidavit was submitted six years ago, it is notable that Ms. Kinsley's hourly rate has not changed during that time (she was $400 per hour in 2019 and is still at that rate). (ECF No. 79-3, PageID 1069.)

Accordingly, the Court will apply a $350 hourly rate for Mr. Miller-Novak.

---

[2]Mr. Hicks's Motion seeks $300 per hour for Attorney Owens, but Mr. Owens's billing records reflect an hourly rate of $275. (ECF No. 78, PageID 1024.) The Court will use the lower rate.

11

### B. Reasonable Hours Expended

The Court must next determine the reasonable number of hours expended. "[T]he prevailing party's lawyer should be the first gatekeeper in this task, exercising the same billing judgment she would with one's client." *Hines v. DeWitt*, No. 2:13-CV-1058, 2016 WL 2342014, at *1 (S.D. Ohio May 4, 2016), *aff'd sub nom. Hines v. City of Columbus, Ohio*, 676 F. App'x 546 (6th Cir. 2017) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). The Court's focus is on "mixed questions about whether the lawyer used poor judgment in spending too many hours on some part of the case or by unnecessarily duplicating the work of co-counsel." *Coulter*, 805 F.2d at 151. Excessive, redundant, or otherwise unnecessary hours will not be counted. *Hensley*, 461 U.S. at 434.

Defendants argue that the fees sought by Mr. Hicks are not reasonable because he seeks fees incurred for the appeal to the Sixth Circuit (in which he was unsuccessful). They then argue that the remaining fees should be reduced in proportion to his lack of success in the claims asserted in the Amended Complaint.

### 1. Fees for appeal

Mr. Hicks did not respond to Defendants' arguments that he is not entitled to attorney's fees incurred on their appeal to the Sixth Circuit. The Court agrees that he is not so entitled and such fees will not be awarded. It appears from the submitted billing records that Attorney Owens is the only attorney who worked on the appeal, so the Court will reduce his time by 36.4 hours.

12

## 2. Proportion to success

The Supreme Court has rejected the notion that attorney's fees should be directly proportional to the prevailing party's recovery. *City of Riverside v. Rivera*, 477 U.S. 561, 574 (1986). Nonetheless, the Sixth Circuit has ruled that a trial court abuses its discretion in failing to consider proportionality altogether. *Dean v. F.P. Allega Concrete Constr. Corp.*, 622 F. App'x 557, 559–60 (6th Cir. 2015). "In determining what is proportional, courts should not employ a strict 'mathematical approach,'" but should instead "look at the degree of plaintiff's overall success." *Dowling v. Litton Loan Servicing, LP*, No. 08–3590, 2009 WL 961124, at *5 (6th Cir. Apr. 9, 2009) (citation omitted). As the Sixth Circuit explained:

> [L]itigation is not an "exact science": Lawyers cannot preordain which claims will carry the day and which will be treated less favorably. Good lawyering as well as ethical compliance often requires lawyers to plead in the alternative (see *Goos v. Nat'l Ass'n of Realtors*, 68 F.3d 1380, 1386 (D.C. Cir. 1995)). Fee awards comport with that reality by giving full credit to a meaningfully successful plaintiff, rather than making a mechanical per-losing-claim deduction from an attorney's fee award (*Hensley*, 461 U.S. at 435).

*Jordan v. City of Cleveland*, 464 F.3d 584, 604 (6th Cir. 2006). "The result is what matters." *DiLaura v. Twp. of Ann Arbor*, 471 F.3d 666, 672 (6th Cir. 2006) (citation omitted).

In response to Defendants' proportionality arguments, Ms. Kinsley agreed that some of the time that she billed was for tasks that were directed to the non-prevailing claims. (ECF No. 80, PageID 1085.) She modified her billing records to include only those tasks that were related to the prevailing claims. Her modified hours billed are 108.6 hours, a reduction of approximately 5%. The Court finds that

13

this is a reasonable deduction because all of Mr. Hicks's claims were based on a common core of facts that led to the December 9 Ban and all but one of the claims alleged related legal theories (the Public Records Act claim being the exception).

Even though Messers. Miller-Novak and Owens did not engage in the same analysis as Ms. Kinsley, the Court finds that a reduction of 5% of their time is reasonable for the same reasons. Accordingly, Mr. Miller-Novak's modified hours are 79.4 and Mr. Owens's pre-appeal modified hours are 39.3.

After removal of the fees incurred on the appeal, the Court finds that the time as modified are proportionate to Mr. Hicks's success.

### 3.  Summary of fees and time

The approved rates and hours billed are:

| Jennifer Kinsley | $400/hour | 108.6 hours | $43,440.00 |
|---|---|---|---|
| Matthew Miller-Novak | $350/hour | 79.4 hours | $27,790.00 |
| Nicholas Owens | $275/hour | 39.3 hours | $10,807.50 |
| Keith Sklar, attorney | $375/hour | 10.25 hours | $3,843.75 |
| Ryan Brann, paralegal | $125/hour | 1.5 hours | $187.50 |
| | | | Total: $86,068.75 |

### C.    Court Costs

Mr. Hicks also seeks to recover $1,726.50 for his filing fee and deposition cost. Defendants do not dispute that he is entitled to recover such costs. Mr. Hicks is hereby awarded $1,726.50.

14

### III.    Conclusion

Mr. Hicks is hereby awarded $86,068.75 in attorney's fees and $1,726.50 in costs.

**IT IS SO ORDERED.**

/s/ Sarah D. Morrison
**SARAH D. MORRISON, CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

15